IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JASON MATYASCIK, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ARCTIC SLOPE NATIVE ASS'N, LTD., ) <br> d/b/a SAMUEL SIMMONDS MEMORIAL ) <br> HOSPITAL, ) <br> ) <br> Defendant. ) <br> _____) | No. 2:19-cv-0002-HRH |

O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Jason Matyascik. Defendant is Arctic Slope Native Association, Ltd., d/b/a Samuel Simmonds Memorial Hospital. Defendant is "the P.L. 93-638 regional health organization for the Arctic Slope Region of Alaska."[3]

---

[1]Docket No. 8.

[2]Docket No. 17.

[3]Affidavit of Marie Carroll at 3, ¶ 4, Docket No. 10.

Plaintiff alleges that "[o]n or about May 14, 2018," he "contracted with" defendant "to renew his employment contract" at defendant's "hospital as a physician."[4] Plaintiff alleges that defendant "refused to honor the contract, terminating [his] employment without providing him" the three-month notice called for in the contract for early termination.[5] Plaintiff also alleges that "[d]uring the 2017-2018 term of [his] employment, [defendant] promised to reimburse several unpaid sums to him, yet failed to fulfill those promises."[6] Plaintiff also alleges that he rented housing from defendant and that defendant overcharged him rent, "ousted [him] from the property without providing him notice to quit[,]" and "failed to return [his] security deposit within the statutory timeframe set forth under AS 34.03.070."[7] Plaintiff further alleges that "[f]ollowing the termination of [his] tenancy," defendant "converted his personal property in violation of AS 34.03.260."[8] Finally, plaintiff alleges that after defendant terminated his contract, defendant "failed to provide notice of an election for COBRA . . . insurance and failed to assist [him] in obtaining COBRA insurance."[9]

---

[4]Complaint at 2, ¶ 7, Exhibit A, Notice of Removal [etc.], Docket No. 1.

[5]Id. at 2-3, ¶¶ 12, 15.

[6]Id. at 3, ¶ 16.

[7]Id. at 3, ¶¶ 19-21.

[8]Id. at 3, ¶ 22.

[9]Id. at 3, ¶ 23.

Plaintiff commenced this action on April 1, 2019. In his complaint, plaintiff asserts the following causes of action: 1) breach of contract, 2) violation of Alaska's Uniform Residential Landlord Tenant Act, 3) conversion, 4) intentional violation of COBRA, and 5) breach of the implied covenant of good faith and fair dealing.

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's claims, arguing that the court lacks subject matter jurisdiction because it is entitled to tribal sovereign immunity and because plaintiff has not exhausted his administrative remedies.

## Discussion

"'[T]he issue of tribal sovereign immunity is [quasi-]jurisdictional.'" Pistor v. Garcia, 791 F.3d 1104, 1110 (9th Cir. 2015) (quoting Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir. 1989)). "Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." Id. at 1111. "In the context of a Rule 12(b)(1) motion to dismiss on the basis of tribal sovereign immunity, 'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit." Id. (quoting Miller v. Wright, 705 F.3d 919, 923 (9th Cir. 2013)). "When a district court is presented with a challenge to its subject matter jurisdiction, '[n]o presumptive truthfulness attaches to [a] plaintiff's allegations.'" Id. (quoting Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009)). "In resolving such a motion, '[a] district court may hear evidence regarding

jurisdiction and resolv[e] factual disputes where necessary.'" Id. (quoting Robinson, 586 F.3d at 685).

"Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe." White v. Univ. of Calif., 765 F.3d 1010, 1025 (9th Cir. 2014). Defendant argues that it is an arm of its member tribes.

> In determining whether an entity is entitled to sovereign immunity as an "arm of the tribe," [the court] examine[s] several factors including: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities."

Id. (quoting Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1187 (10th Cir. 2010)).

As plaintiff concedes,[10] the first four factors weigh in favor of defendant being considered an arm of its member tribes. Defendant "is comprised of the eight federally-recognized Indian tribes in the" Arctic Slope Region and these "member tribes' governing bodies have each passed tribal government resolutions authorizing [defendant] to receive certain federal funds to provide services to their tribal members."[11] Defendant was established to provide health care and other services pursuant to the Indian Self-Determination and Education Assistance Act (ISDEAA), the Indian Health Care Improvement Act, and

---

[10]Memorandum in Support of Opposition to Motion to Dismiss at 5, Docket No. 17.

[11]Carroll Affidavit at 3, ¶ 4, Docket No. 10.

-4-

the Alaska Tribal Health Compact.[12] "Providing health care is a core governmental function of Alaska tribes[.]"[13] Thus, defendant "is not simply a business entity that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially related to self-governance." E.E.O.C. v. Karuk Tribe Housing Authority, 260 F.3d 1071, 1080 (9th Cir. 2001). Defendant is controlled by its Board of Directors, which consists of elected or appointed members from each of the eight tribal members. And in its by-laws, defendant states that it "is an arm of its member Tribes, is organized to carry out its member Tribes' essential governmental programs and goals, and is entitled to and shall in all matters assert and be protected by the sovereign immunity of its member Tribes from suit, judgment or execution in any forum or jurisdiction."[14] In addition, in plaintiff's employment agreement with defendant, "[t]he [p]arties agree[d] that[] [n]othing in this Agreement may be construed to limit or in any way prejudice ANSA's protections under the Federal Tort Claims Act and other protections, privileges or immunities applicable to ANSA, including sovereign immunity and all applicable federal and common law protection from suit."[15]

---

[12]Bylaws of the Arctic Slope Native Association, Limited at 1, ¶ 1.4, Exhibit 3, Carroll Affidavit, Docket No. 10.

[13]Carroll Affidavit at 2, ¶ 3, Docket No. 10.

[14]Bylaws of the Arctic Slope Native Association, Limited at 1, ¶ 1.4, Exhibit 3, Carroll Affidavit, Docket No. 10

[15]Physician Employment Agreement at 9, ¶ 13.2, Exhibit 5, Carroll Affidavit, Docket No. 10.

The dispute here centers on the fifth factor, which is the financial relationship between defendant and its member tribes. Defendant argues that this factor also weighs in favor of finding that it is an arm of its member tribes. Marie Carroll, defendant's president and CEO, avers that defendant's "budget is substantially based on federal funds provided to benefit its member tribes and their tribal members" and that if damages were to be awarded in this case, they "would be paid from [defendant's] member tribes' federal health care funding[.]"[16] In other cases, when considering this factor, this court has found that this factor weighs in favor of a tribal consortium being an arm of its member tribes because the tribal consortium was largely funded by federal funds intended to allow tribes to carry out their governmental function of providing health care services to their members. See Barron v. Alaska Native Tribal Health Consortium, 373 F. Supp. 3d 1232, 1240 (D. Alaska 2019); Wilson v. Alaska Native Tribal Health Consortium, Case No. 3:16-cv-0195-TMB.[17]

Plaintiff argues, however, that consideration of the financial relationship factor clearly shows that defendant is not entitled to sovereign immunity because its member tribes are not the "real parties in interest." In support of this argument, plaintiff cites to Runyon ex rel. B.R. v. Association of Village Council Presidents, 84 P.3d 437 (Alaska 2004). There, the parents of two children who were allegedly injured while attending a Head Start program ran by the defendant ("AVCP") brought tort claims against AVCP. Id. at 438. AVCP "is a

---

[16]Carroll Affidavit at 4, ¶ 7, Docket No. 10.

[17]Order on Motion for Lack of Subject Matter Jurisdiction [etc.] at 14, Case No. 3:16-cv-0195-TMB, Docket No. 87, Notice of Supplemental Authority, Docket No. 21.

nonprofit Alaska corporation consisting of fifty-six Alaska Native villages in the Bethel area, each a federally recognized tribe." Id. "[I]ts board of directors is comprised of one representative from each member village. Each representative has a single, equal vote in the Association." Id. In addition, AVCP "operates a wide range of traditionally governmental programs designed to benefit the member tribes, almost exclusively with state and federal funding." Id. (citation omitted). The issue before the Alaska Supreme Court was "whether AVCP may be sued by private parties, or whether the sovereign immunity of its member tribes extends to bar such suits." Id. at 439. The court observed that "[a] subdivision of tribal government or a corporation attached to a tribe may be so closely allied with and dependent upon the tribe that it is effectively an arm of the tribe." Id. at 439 (citations omitted). The court stated that "[w]hether the entity is formed by one tribe or several, it takes on tribal sovereign immunity only if the tribe or tribes, the sources of sovereign authority and privilege, are the real parties in interest." Id. at 440. The court found that the most important factor to consider was "the financial relationship between AVCP and the villages" and based on consideration of that factor, concluded that the villages were not the real parties in interest because "[a]nder Alaska law, the fifty-six villages of AVCP, the members of a nonprofit corporation, 'are not . . . liable . . . on [the corporation's] obligations." Id. at 441 (quoting AS 10.20.051(b)). Because "[a]ny judgment against AVCP will be paid out of the Association's coffers alone[,]" the Alaska Supreme Court held that AVCP "is not protected by tribal sovereign immunity. . . ." Id.

Similarly here, plaintiff argues that because defendant is an Alaska nonprofit corporation, its member tribes would not be liable for any damages that might be awarded. Thus, plaintiff urges the court to conclude that defendant's member tribes are not the real parties in interest and that defendant is not entitled to sovereign immunity.

Plaintiff argues that defendant's reliance on <u>Barron</u> and <u>Wilson</u> is misplaced because in those cases, the court did not consider the fact that under Alaska law, the members of a nonprofit organization are not liable for any damages awarded against the organization. Plaintiff also argues that because the Ninth Circuit in <u>White</u> did not consider the financial insulation argument, it would not be inconsistent with <u>White</u> for this court to find the financial insulation factor dispositive of whether defendant is an arm of its member tribes. Moreover, plaintiff points out that in <u>White</u>, the entity in question, the Repatriation Committee, was "a tribal organization" that was "funded exclusively by the Tribes." <u>White</u>, 765 F.3d at 1018, 1025. Thus, plaintiff argues that the tribes in <u>White</u> would have been responsible for paying a damages award because there was no corporate structure to protect the tribes from the debts of the Committee. But here, plaintiff argues that the member tribes are financially protected from the debts of defendant. Thus, plaintiff argues that the court should find that defendant is not entitled to sovereign immunity because its member tribes will not be financially responsible for any damages awarded in this case.

In reply, defendant argues that plaintiff is asking the court to deviate from federal law and follow a conflicting state law case. Defendant argues that <u>Runyon</u> does not bind this

court and reminds plaintiff that "tribal immunity is a matter of federal law and is not subject to diminution by the States.'" Michigan v. Bay Mills Indian Community, 572 U.S. 782, 789 (2014) (citation omitted). Defendant argues that this court is bound to apply federal law and that under federal law "a tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so." American Vantage Companies, Inc. v. Table Mountain Rancheria, 292 F.3d 1091, 1099 (9th Cir. 2002). Defendant argues that the ISDEAA supports this proposition as it expressly provides that

> [i]n any case in which an Indian tribe has authorized another Indian tribe, an inter-tribal consortium, or a tribal organization to plan for or carry out programs, services, functions, or activities (or portions thereof) on its behalf under this subchapter, the authorized Indian tribe, inter-tribal consortium, or tribal organization shall have the rights and responsibilities of the authorizing Indian tribe. . . .

25 U.S.C. § 5381(b). In other words, defendant contends that an inter-tribal consortium performing a tribe's ISDEAA functions, which is the case here, is entitled to whatever rights the tribe has, including sovereign immunity, regardless of any organizational form. Defendant argues that to hold that an ISDEAA tribal consortium loses its sovereign immunity by incorporating would undermine the purpose of the statute "to aid tribal entities in their efforts to conduct their own affairs and economic activities with as much autonomy as possible." Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1188–89 (9th Cir. 1998).

Defendant also argues that contrary to plaintiff's suggestion, <u>Runyon</u> and <u>White</u> cannot be read in harmony because <u>Runyon</u> puts undue emphasis on the legal insulation factor, rather than considering all the factors set forth in <u>White</u>. Defendant also points out that other federal courts have declined to treat the financial insulation factor as dispositive as the court in <u>Runyon</u> did. In <u>J.L. Ward Associates, Inc. v. Great Plains Tribal Chairmen's Health Board</u>, 842 F. Supp. 2d 1163, 1164-65 (D.S.D. 2012), Great Plains was a non-profit corporation formed by "[s]ixteen federally recognized Indian tribes . . . to provide the Indian people of the Great Plains area with a single entity to communicate and participate with the Indian Health Service ('IHS') and other federal agencies on health matters." "In addition to communicating with IHS on behalf of the sixteen tribes," Great Plains "also enter[ed] into 'self-determination contracts' under the" ISDEAA. <u>Id.</u> at 1165. "In support of its argument that Great Plains [was] not entitled to sovereign immunity," J.L. Ward relied "mainly on <u>Runyon</u>[.]" <u>Id.</u> at 1174. J.L. Ward argued that similar to <u>Runyon</u>, the court should find that Great Plains was not entitled to sovereign immunity because "the tribes would not be liable for a judgment against Great Plains[.]" <u>Id.</u> at 1175. The court declined to apply the financial insulation test, or the "real parties in interest" test, from <u>Runyon</u>, instead relying on factors similar to those in <u>White</u>. <u>Id.</u> at 1176. And, while recognizing that "[a] suit against Great Plains would not appear to affect, at least not directly, any particular tribe's fiscal re-sources[,]" the court nonetheless found that Great Plains was entitled to sovereign immunity

because "[t]he remaining factors . . . establish that Great Plains is the sort of tribal entity entitled to sovereign immunity."

The court declines to follow Runyon, as plaintiff urges, and make financial insulation a dispositive factor. Doing so would run counter to White, which is the law this court is bound to follow. It is worth noting that the factors in White were derived from a Tenth Circuit case, Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1186-87 (10th Cir. 2010), in which the court considered and rejected the Runyon financial insulation test. More specifically, the Tenth Circuit stated that "[a]lthough we recognize that the financial relationship between a tribe and its economic entities is a relevant measure of the closeness of their relationship, . . . it is not a dispositive inquiry." Id. at 1187 (emphasis in the original).

Plaintiff's financial insulation argument ignores the fact that defendant's core funding comes from tribally-authorized federal funding that it receives on behalf of its member tribes along with non-federal funds that it is able to collect due to its status as an ISDEAA organization providing health care services for the tribes. In other words, defendant's funding is money that the tribes would receive directly if they chose to operate individually, as ISDEAA allows. Thus, a judgment for damages against defendant would adversely affect its member tribes because funds would be diverted from health care services. The member tribes would not be insulated from financial harm simply because they might not be directly liable for an adverse judgment.

Defendant is entitled to sovereign immunity because it is an arm of its member tribes. And, if defendant is entitled to sovereign immunity, defendant has not waived that immunity as to plaintiff's contract and statutory claims.

As for plaintiff's conversion claim, plaintiff concedes that he has not exhausted his administrative remedies as required by the Federal Tort Claims Act (FTCA).[18] See Valadez-Lopez v. Chertoff, 656 F.3d 851, 855 (9th Cir. 2011) (quoting Jerves v. United States, 966 F.2d 517, 518 (9th Cir. 1992) ( (FTCA "'provides that before an individual can file an action against the United States in district court,[he] must seek an administrative resolution of [his] claim'"). Thus, plaintiff's conversion claim must also be dismissed.

## Conclusion

Defendant's motion to dismiss is granted. Plaintiff's contract and statutory claims are dismissed with prejudice, and plaintiff's conversion claim is dismissed without prejudice.

DATED at Anchorage, Alaska, this 5th day of August, 2019.

/s/ H. Russel Holland
United States District Judge

---

[18] Memorandum in Support of Opposition to Motion to Dismiss at 9-10, Docket No. 17.